IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

TROY GREEN                                                                                          PLAINTIFF

V.                              NO. 3:21-CV-00249-JTK

KILOLO KIJAKAZI, ACTING COMMISSIONER of
SOCIAL SECURITY ADMINISTRATION[1]                              DEFENDANT

**ORDER**

I. **Introduction:**

On August 2, 2019, Plaintiff, Troy Green ("Green"), applied for disability benefits, alleging a disability onset date of July 17, 2017. (Tr. at 10). The claim was denied initially and upon reconsideration. *Id*. In a written decision dated April 14, 2021, an Administrative Law Judge ("ALJ") denied Green's application. (Tr. at 22). The Appeals Council denied his request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Green has requested judicial review.

For the reasons stated below, the Court [2] affirms the decision of the Commissioner.

II. **The Commissioner's Decision:**

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration and is substituted as the Defendant in this action. Fed. R. Civ. P. 25(d).

[2] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

The ALJ found that Green had not engaged in substantial gainful activity since the alleged onset date of July 17, 2017.[3] (Tr. at 12). The ALJ found, at Step Two, that Green had the following severe impairments: seizure disorder, polyneuropathy, anxiety disorder, depressive disorder, and neurocognitive disorder. (Tr. at 13).

After finding that Green's impairments did not meet or equal a listed impairment (Tr. at 13-14), the ALJ determined that Green had the residual functional capacity ("RFC") to perform work at the light exertional level, with the following additional limitations: (1) he can no more than occasionally stoop, kneel, crouch, or crawl; (2) he should take the necessary seizure precautions, such as not working around unprotected heights or dangerous moving mechanical parts and no driving or operating heavy equipment; (3) he can perform work with only occasional contact with the general public, can understand, follow, and retain simple instruction, and can perform tasks that require little independent judgment to perform those tasks; and (4) he can tolerate only occasional changes in a routine work setting. (Tr. at 15).

At Step Four, the ALJ found that Green was unable to perform any of his past

---

[3] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

relevant work. (Tr. at 38). At Step Five, the ALJ relied upon Vocational Expert ("VE") testimony to find that, based on Green's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that he could perform. (Tr. at 22). Therefore, the ALJ found that Green was not disabled. *Id.*

### III. Discussion:

    A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); see also 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> Our review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the

3

meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

    B. Green's Arguments on Appeal

Green contends that the evidence supporting the ALJ's decision is less than substantial. He argues that the ALJ did not properly consider the medical opinion from Anne Josiah, M.D., Green's main treating provider. For the following reasons, the Court finds that substantial evidence supports the ALJ's decision.

The ALJ documented the fact that Green treated his neurocognitive and seizure disorders. But Green stated that his last seizure was in 2015, and EEG and neurological testing were routinely normal. (Tr. at 1555, 1562-1563). Dr. Josiah noted in August 2019 that he had not had any recent seizures and that his jerking motions had mostly gone away. (Tr. at 1550-1558). She also said that epilepsy was well-controlled on Keppra and Lamotrigine. (Tr. at 607-615, 1391-1396). Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). She

encouraged Green to follow up with a psychiatric provider. Green did that, and found that Lexapro was helpful for mood and anxiety. (Tr. at 1550-1558).

At multiple times in the record, Dr. Josiah said that Green was independent in his activities or daily living. Indeed, he said he could fix simple meals, handle self-care, do a few chores, and that he like antiquing and visiting with family. (Tr. at 16, 238-242). Such daily activities undermine his claims of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). Green also routinely traveled from Arkansas to Wisconsin. (Tr. at 372-380, 642-648, 1365-1371). Dr. Josiah told Green to continue with regular activity and exercise. (Tr. at 1619-1625).

Dr. Josiah filled out a Medical Source Statement on March 16, 2021. (Tr. at 1689-1690). This was after filling out multiple Treating Physician's Statements. (Tr. at 699-701, 803-805, 1562-1572). All statements were on checkbox forms, with little citation to the record. Short checkbox opinions may properly be discounted, if they are conclusory or unsupported by relevant medical evidence. *See Thomas v. Berryhill*, 881 F.3d 672, 675-676 (8th Cir. 2018). The physician statements were duplicative, in which Dr. Josiah stated that Green would need to take some seizure work precautions, but that medication was effective, and that "Green's epilepsy disorder did not preclude working."[4] (Tr. at 949-951). She also stated that Green

---

[4] The ALJ included seizure precautions in the RFC. (Tr. at 15).

was independent with activities of daily living on the statements.

The March 2021 Medial Source Statement suggested that Green would need frequent rest periods and longer than normal breaks at work. (Tr. 1689-1690). Dr. Josiah opined that Green would have decreased concentration. She said he would miss more than three days of work per month. *Id*.

The ALJ fully complied with the regulations about evaluation of medical opinions.[5] He discussed Green's treatment with Dr. Josiah throughout the opinion and then considered the opinion, but found it not persuasive. (Tr. at 20-21). He found that it was not consistent with Dr. Josiah's own notes, or with generally normal neurological examinations. *Id*. He contrasted Dr. Josiah's restrictive opinion with the fact that Green had not had a seizure since 2015 and that his seizure medication was last adjusted in 2019. *Id*. While the ALJ may not have detailed every portion of Dr. Josiah's notes, he did a good job of summarizing her opinions and then gave

---

[5] On January 28, 2017, the Administration promulgated new regulations governing how ALJs assess medical opinion evidence. The new rules, with an effective date of March 27, 2017, focus on whether an opinion is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant [which includes; (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship]; (4) provider specialization; and (5) any other important factors. See 20 C.F.R. § 404, 1520c(a)-(c)(2017). An opinion is more persuasive if it is consistent with and supported by the medical evidence as a whole. 20 C.F.R. § 416.920c(c)(1-2) (2017); *Bonnett v Kijakazi,* 859 Fed. Appx. 19 (8th Cir. 2021); *Phillips v. Saul*, No 1:19-CV-00034-BD, 2020 U.S. Dist. LEXIS 110370 at *4 (E.D. Ark. June 24, 2020). An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Id*.

good reasons for discounting those opinions. Extreme restrictions were simply inconsistent with the benign medical record.

The record showed conservative treatment, and Green's impairments responded well to treatment. He improved over the relevant time-period. He was able to do activities of daily living. The ALJ properly considered the evidence of record and assigned an RFC that fully incorporated Green's credible limitations.

## IV.  Conclusion:

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ gave good reasons for how he evaluated the medical opinions of record. The finding that Green was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is AFFIRMED. Judgment will be entered for the Defendant.

IT IS SO ORDERED this 16th day of August, 2022.

_____
UNITED STATES MAGISTRATE JUDGE